(107 So. 143)

Nos. 27583, 27622.

## WILLIAM D. SEYMOUR & CO., Inc., v. CASTELL et al.

(Jan. 4, 1926. Rehearing Denied Feb. 1, 1926.)

*(Syllabus by Editorial Staff.)*

On Motion to Dismiss.

**1. Appeal and error** ☞627(2)—**Suspensive appeal dismissed, where transcript not timely filed.**

Suspensive appeal allowed defendant on July 31, 1925, and returnable to Supreme Court on September 28th, on which day return day was extended to October 28th, will be dismissed, where transcript of appeal was not filed in Supreme Court until October 29th.

On the Merits.

**2. Bills and notes** ☞226—**Defense of failure of consideration held unavailable to accommodation indorser on substituted notes.**

In suit on substituted notes against accommodation indorser, defense of failure of consideration *held* unavailable, though defendant was only secondarily liable on original note, where original note was supported by consideration, and defendant became bound as primary obligor when such note matured, and was not paid by maker, and at defendant's request holder of original note consented to extend time of payment, and to accept substituted notes in lieu thereof.

**3. Bills and notes** ☞96, 226—**Liability of "accommodation" indorser, or maker, not affected by failure to receive consideration.**

Liability of an accommodation indorser, or maker, of commercial paper, is not affected by fact that he received no consideration for his signature; "accommodation" implying that there was no consideration passing to such indorser.

[Ed. Note.—For other definitions, see Words and Phrases, First and Second Series, Accommodate—Accommodation.]

**4. Bills and notes** ☞371—**Defense of no consideration unavailable to accommodation indorser as against holder for value.**

In action on notes by holder for value against accommodation indorser, defense of want of consideration *held* unavailable, in view of Negotiable Instruments Law, § 29.

**5. Evidence** ☞20(1)—**Common knowledge that commercial and business transactions are made and credit extended on accommodation paper.**

It is common knowledge that very large proportion of commercial and business transactions are made and credit extended on accommodation paper.

**6. Corporations** ☞388(5)—**Accommodation indorser held estopped to plead defense that transaction by which holder acquired notes was ultra vires.**

Accommodation indorser *held* estopped to plead defense, as against holder for value that, transaction by which it acquired notes was ultra vires of its charter.

**7. Corporations ⬤══461—Charter authorized company to loan money, and to accept notes as evidence of business transactions.**

Charter, specifically authorizing company to engage in and carry on a general merchandise and commercial business, *held* to include power to loan money to its customers, and to accept notes as evidence of such business transactions.

**8. Bills and notes ⬤══534—Attorney fees only allowable under contract or special statutory provisions.**

In suit on note, attorney fees are only allowable under a contract or special statutory provisions.

**9. Bills and notes ⬤══534—Attorney fees for collection of notes not allowed.**

In suit on notes, plaintiff *held* not entitled to recover attorney fees, where additional charge for collection of notes was to be based on a percentage which was declared should be considered as liquidated damages, and that percentage was *not* fixed.

**10. Costs ⬤══260(4)—Appeal by accommodation maker of note failing in defense of no consideration, but prevailing as to attorney fees held not frivolous.**

Appeal by defendant accommodation maker of note, whose contention of want of consideration was not sustained, but who prevailed as to nonliability for attorney fees, *held* not one calling for penalty as frivolous.

**11. Costs ⬤══237—Defendant appellant prevailing as to attorney fees, plaintiff should pay costs of appeal.**

On appeal, by defendant accommodation maker of note, whose contention of want of consideration was not sustained, but who prevailed as to nonliability for attorney fees, *held*, plaintiff should pay costs of appeal.

Appeal from Civil District Court, Parish of Orleans; Porter Parker, Judge.

Action by William D. Seymour & Co., Inc., against William J. Castell and another. Judgment for plaintiff, and defendant W. H. Cowley took a suspensive and devolutive appeal. Suspensive appeal dismissed. Judgment amended and affirmed.

Delvaille H. Theard, of New Orleans, for appellant.

H. L. Hammett, of New Orleans, for appellee.

On Motion to Dismiss.

ST. PAUL, J. [1] On July 31, 1925, one of the defendants herein was allowed a *suspensive* appeal, returnable to this court on September 28th.

On September 28th he obtained an extension of the return day to October *28th*.

On October *29th* he filed the transcript of appeal in this court.

On October 31st appellee moved to dismiss the appeal on the ground that the transcript had been filed (one day) too late.

I.

In Landry v. Le Boeuf & Sons, 153 La. 31, 95 So. 391, this court said:

"It is well settled that the three days of grace allowed for the filing of a transcript of appeal, or for obtaining an extension or postponement of the return day, do not apply *again* when the return day has once been extended or postponed" —citing numerous authorities.

This was a case in which the delay was due *apparently* to the negligence of a railway express company in not forwarding the transcript in time. But the fact that the delay might be attributable to the express company availed the appellant nothing; it being held that it was the *duty of the appellant himself* to see that the transcript reached this court on or before the expiration of the delay in which to file it.

II.

In Terry Construction Co. v. James K. Sutherlin Co., 145 La. 397, 82 So. 384, this court said:

"When the time for filing a transcript is extended by order of this court, the transcript must be filed on or before the expiration of the delay so granted, unless, within such delay, an order granting *further* delay is applied for and obtained. It is too late thereafter to apply for such [further] extension. *The motion to dismiss, in such case, may be filed at any time*"— citing authorities.

### Decree.

The suspensive appeal herein taken is therefore dismissed.

### On the Merits.

THOMPSON, J. This suit is against two makers of 32 promissory notes aggregating in amount the sum of $1,872.32, with interest. There is also a claim for 10 per cent. attorney fees.

The defendant Castell made no defense, and judgment by default was confirmed against him.

The defendant Cowley pleaded failure of consideration, alleging that he did not receive anything or property of value for his signature which as between the original parties to the notes is without consideration.

There was judgment against Cowley, and he appeals.

It appears that Castell executed his note in favor of William D. Seymour & Co., Inc., for $2,816.67 on August 15, 1923, and which was made payable on October 15th of that year. The note was for money borrowed by Castell from the Seymour Company and the note was indorsed by Cowley.

When the note matured the maker was unable to pay the same and at the request of the indorser, Cowley, the amount of the note, plus unearned interest, was divided into 52 weekly payments of $58.51 each, for which weekly payments Castell and Cowley executed to the order of Wm. D. Seymour & Co. 52 notes, each bearing interest after maturity. On the execution of these notes the original note was canceled; that is to say, the names of Castell, maker, and Cowley, indorser, were erased from the note. The first 20 of the series of notes were paid by Cowley and this suit is on the last 32 notes.

[2] From the foregoing statement it is perfectly apparent that the defense of want or failure of consideration has no foundation either in fact or in law.

There was admittedly a consideration, so far as concerns Castell, for the original note, and that note constituted a valid consideration for the substituted notes.

There was likewise a consideration, as against Cowley, for the substituted notes, on which he became a maker conjointly and in solido with Castell.

It is true Cowley was only secondarily liable as an accommodation indorser on the original note, but, when that note matured and was not paid by the maker, Cowley became bound as a primary obligor, and it was at his request that the holder of the original note consented to extend the time of payment, and to accept the several notes sued on in lieu thereof with Cowley, as one of the makers.

It needs no citation of authority to sustain the proposition that the division of the amount of the original note, when it became due, and when the liability of the indorser had become fixed and determined, into weekly installments to be paid in future, furnished an adequate and legal consideration for the signing of the said notes by Cowley.

Especially is this true when the extension of time and the division of the original debt was made by the creditor at the instance and request and for the benefit of Cowley.

But, aside from this, it will not do to say that Cowley was not bound on the original note as an accommodation indorser because he received no consideration for his signature, nor to say that such infirmity affected the substituted notes.

[3] The liability of an accommodation indorser or maker of commercial paper is not affected by the fact that he received no consideration for his signature and name. The word "accommodation" implies and presupposes that there was no consideration passing to such indorser.

It is a misnomer to say that a person is an accommodation indorser where such

person receives a pecuniary consideration for lending his name.

Section 29 of the Negotiable Instruments Law (Act 64 of 1904) provides:

"An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party."

Many years before this law was passed this court said:

"The accommodation party to a note holds himself out to the public, by his signature, as absolutely bound to every person who shall take the note for value, to the same extent as if that value were personally advanced to himself, or at his request." Matthews Finlay & Co. v. Rutherford, 7 La. Ann. 225.

The learned counsel for the defendant attempts to draw a distinction between the obligation of an accommodation indorser to a holder for value and a holder in due course.

The law makes no such difference and the courts are not authorized to make any.

The obligation of an accommodation indorser or maker to a holder for value is no less than is his liability to a holder in due course.

Such an indorser or maker has no more right to plead want of consideration against the original payee or holder for value than he has to plead such an infirmity against a holder in due course.

[4] The plaintiff was a holder for value, and his action against Cowley cannot be defeated on the plea of want of consideration, even though it was found that no consideration passed to Cowley.

[5] It is common knowledge that a very large proportion of the commercial and business transactions of the world are made and credit extended on accommodation paper. But for the name and credit of accommodation makers and indorsers many such transactions would never be made. It would be an anomaly and surprisingly startling to the commercial world to hold, in the face of positive law and universal custom to the contrary, that a payee or holder for value could not recover against an accommodation indorser or maker.

[6] Another defense, not made in the pleadings and the court below, but raised for the first time in this court, is that the transaction by which the plaintiff company acquired the notes was ultra vires of its charter.

It is conceded that Castell, the real beneficiary of the note, could not be heard to urge such a defense. The defendant Cowley is, as we have concluded, equally bound with Castell, and, that being true, he is in no better position to plead this defense than is Castell.

But if we are mistaken in this view, still we are of the opinion that the transaction falls well within and is incidental to the objects and purposes for which the corporation was organized. In this connection the charter provides that the company may carry on a general merchandise, commercial brokerage, and commission business; to import and export, buy and sell, at wholesale and retail or otherwise acquire and dispose of, and generally to trade and deal in goods, wares, products, commodities, and merchandise of every kind and description, as principal, factor, or agent; to act as buying and selling agents for merchants and manufacturers, and to do all kinds of commercial brokerage and commission business; and, generally, to do and perform such acts and deeds and transact such business as may be incidental or germane to any of the objects and purposes herein set forth, the foregoing details not being intended to be exclusive, it being intended to do any act or thing necessary to carry out and accomplish the purposes of said corporation.

[7] It is true the charter does not specifically authorize the company to loan money and to take notes to secure such loans, but the charter does specially authorize the company to engage in and carry on a general merchandise and commercial business, and this necessarily includes the power to loan money to its customers and to accept notes as evidence of such business transactions.

The defendant next complains that the judgment condemned him to pay 10 per cent. attorney fees on the amount of the notes.

The notes contain the following stipulation:

"And in the event default is made in the payment of this note at maturity and it is placed in the hands of an attorney for collection or suit is brought on the same, then an additional amount of ——— per cent. on the principal and interest of this note shall be added to the same as collection fees, here agreed upon as liquidated damages."

It will be observed that the amount is left blank in the stipulation.

To supply this omission the plaintiff, while admitting that no amount of attorney fees was fixed in the notes, alleged that the plaintiff will be obliged to pay attorney fees at the rate of 10 per cent., which said charge is fair and reasonable.

[8] We are of the opinion that the plaintiff is not entitled to recover the fees of its counsel. Such fees are only allowable under a contract or special statutory provisions. There was manifestly no contract between the parties fixing any definite amount to be paid as attorney fees, and in the absence of such a contract the court would not be authorized to award the same on a quantum meruit. To do so would be to write a contract which the parties themselves failed to make.

It is conceded by the plaintiff that there is no authority in this state for the allowance of the fees claimed, but it is argued that the court should follow the rule laid down in 3 Ruling Case Law, p. 896, and 8 Corpus Juris, p. 1098, to the effect that a reasonable sum as attorney fees may be allowed where provision is made in the note for attorney's fees but the amount is left blank.

If the notes had provided for the payment of a reasonable attorney fee without stating the amount, then of course the plaintiff would have been entitled to prove the value of the service of the attorney and to recover on a quantum meruit.

[9] But here the additional charge for the collection of the notes was to be based on a percentage, which was declared should be considered as liquidated damages, and that percentage was not fixed or stated. How can the court say that the defendant agreed to pay a reasonable attorney fee based on the amount of services rendered or as might be deemed by the court to be reasonable, when, according to the stipulation, such a fee was to be on a percentage basis only? It might well be assumed that the defendant was willing to obligate himself for 5 per cent., but not for 10 per cent., nor for such amount as the court may determine was reasonable.

We prefer to follow our own rule of jurisprudence, wherein litigants are not taxed with the fees of counsel of their adversary, except under specific agreement, or where such fees are allowed by special statutes.

[10] This is not a case which calls for the imposition of a penalty for frivolous appeal.

The judgment appealed from is amended by rejecting the attorney fees, and, as thus amended, said judgment is affirmed.

[11] The costs of this appeal to be paid by plaintiff.

O'NIELL, C. J., concurs in the decree.