PEROT v. CAROLINA INS. CO. OF WILMINGTON, N. C.

No. 5370.

Court of Appeal of Louisiana. Second Circuit.

Jan. 5, 1937.

St. Clair Adams & Son, of New Orleans, for appellant.

Harry V. Booth, of Shreveport, for appellee.

DREW, Judge.

This suit involves the right of plaintiff to recover under a certain policy of fire insurance covering household goods, furniture, and personal effects. The defendant insurance company admits the issuance of the policy and that a fire occurred on the 23d day of August, 1935, to the premises No. 6412 Tulsa avenue, in the city of Shreveport. The defendant further admits that proofs of loss were filed and demand made for payment, and that defendant has refused to make any payment whatsoever. The defendant then set forth the following special defenses:

"11. That, for further answer to plaintiff's petition, defendant says:

"That the policy contract sued upon, among other things, contains the following clause: 'This entire policy shall be void if the insured has concealed or misrepresented, in writing or otherwise, any material fact or circumstance concerning this insurance or the subject thereof; or if the interests of the insured in the property be not truly stated herein; or in case of any fraud or false swearing by the insured touching any matter relating to this insurance or the subject thereof, whether before or after a loss.'

"That following the fire plaintiff, the assured, submitted to defendant, through its adjusters Fire Companies' Adjustment Bureau, Inc., a list or schedule purporting to show the insured property destroyed and its replacement cost; that thereafter plaintiff made this list or schedule a part of his sworn proof of loss which was submitted to defendant; that the purported list or schedule was 'padded' and was false and fraudulent to the knowledge of plaintiff, and was filed with the express and deliberate intention of deceiving defendant as to the amount of loss or damage; that said list or schedule contained many articles which were not in the premises when the fire took place and the values set opposite the various articles were in many instances excessive and gross overvaluations; that plaintiff, in submitting aforesaid purported list or schedule, both originally and as a part of his sworn proof of loss, did so for the purpose and with the deliberate intention of deceiving defendant insurance company and thereby collecting a loss and damage to which he was not entitled under the policy contract.

"That defendant expressly pleads that the fraud and false swearing of plaintiff, the assured, voids the entire policy contract under the provisions of the policy above set out.

"12. That subsequent to the filing of sworn proof of loss, defendant demanded that plaintiff submit to an examination under oath under the policy contract (lines 81–85); that plaintiff complied with this demand and submitted himself to be examined under oath on October 10, 1935; that plaintiff swore falsely that the list or schedule heretofore referred to represented the price paid for the various named articles and that all of said articles were destroyed in the fire aforesaid; that plaintiff also swore falsely with respect to the dates on which a number of the articles were purchased and the price paid therefor; that plaintiff also swore falsely when he testified that he did not know that the fire was of incendiary origin.

"That defendant expressly pleads the false swearing by plaintiff when examined under oath on October 10, 1935, as voiding the policy in its entirety under the clause heretofore set out.

"13. That the fire which occurred on August 23, 1935, at 1:50 A. M. in the premises No. 6412 Tulsa Avenue, Shreveport, Louisiana, where the property insured under this policy was supposed to have been located, was of incendiary origin.

"That plaintiff herein either set fire to or caused some person unknown to your defendant to set fire to said premises for the

fraudulent purpose of collecting insurance under the policy herein sued upon."

The case was tried in the district court and concluded after a two-day trial. The case was reopened later on a motion filed by plaintiff, and additional testimony was taken on April 6, 1936. After taking the case under advisement, the trial judge rendered a decision in favor of plaintiff on June 8, 1936. The judgment was as prayed for, except as to the 12 per cent. penalty, which was not allowed. It allowed attorney's fees in the sum of $150, as agreed upon by counsel. The defendant has prosecuted a suspensive appeal to this court and plaintiff, appellee, has answered the appeal praying that the judgment of the district court be amended by allowing the 12 per cent. penalty and by increasing the attorney's fees to $350.

Defendant in its brief discusses the last defense set up first, and we will do likewise in this opinion. We are fully aware of the line of authorities which hold that to find that plaintiff set fire to his house, it is only necessary to establish same by a preponderance of the testimony, to show a motive in plaintiff and a lack of motive in any one else. But before this question can be determined, it is necessary that defendant show by a preponderance of the testimony that the fire was of incendiary origin.

Plaintiff's residence was destroyed by fire at 1:50 a. m., August 23, 1935, at a time when no one was in the house, plaintiff being engaged in his usual work and his wife and children gone on a visit to Texas. The destruction of the house was so complete that it was necessary to entirely demolish the remaining part. Defendant contends and urges as a circumstance to show the fire was of incendiary origin that the fire started in the front bedroom, the first room on the southeast corner which was badly gutted by the fire; that the condition was similar in the kitchen, which is diagonally across at the northwest corner. The living room and dining room which intervene were burned, but in a lesser degree, and that the second bedroom, the bathroom at the back of the house, and the back porch in a still lesser degree.

The next circumstance urged is that the clothes hangers in the closet in the front bedroom showed no signs after the fire of having had clothes on them, although plaintiff contends that the hangers contained clothes which were destroyed by the fire.

Defendant contends that if the clothes were burned on them, the hangers would have borne evidence of it, such as ashes or pieces of the burned clothing. It also contends that the hangers, which were made of wire, were too close together to have had clothes on them at the time of the fire.

Another circumstance pointed out by defendant is that in a closet in the second bedroom there were found some rags with turpentine on them. This closet was not burned and there was some matting on top of a cedar chest outside this closet with turpentine on it; and on a table in another room there were found some clothes and rags which smelled of turpentine.

Another circumstance which defendant urges is that plaintiff's wife left home about 11 o'clock the night of the fire, went by and picked up her seventy-eight year old mother and sixty-seven year old stepfather, and drove to Carthage, Tex., to visit a friend whom they did not find at home, so they drove to Overton, Tex., to visit some relatives with whom they remained until the next afternoon, when they returned home.

Defendant also contends in its brief that plaintiff had removed a great number of articles from the premises before the fire. A careful examination of the record fails to disclose any testimony to support this contention and, to the contrary, it is very clearly proven that nothing was removed from the premises.

The fire occurred in August when the weather was very hot. Plaintiff's residence was located in a thickly settled part of the city of Shreveport. His neighbors were in his home late the afternoon before the fire and testified that all the furniture, etc., was there and there were no indications of anything having been removed or prepared for removal. Several of his neighbors were on their porches until late at night and saw nothing removed from the house. The burned and melted silverware was found in the house after the fire, as were burned remnants of clothes, including plaintiff's wife's best evening gown. There is no evidence to create even a suspicion that anything was removed from the house prior to the fire.

The proof on the first circumstance urged by defendant as to two separate fires in the house is not convincing. The testimony on this point is very conflicting, but even if it were true, under plaintiff's theory of the origin of the fire, it would not be of

great weight. When the fire was discovered, the entire house was ablaze. If we assume that the kitchen and front corner bedroom were more badly burned than the intervening rooms, we do not think it would be a circumstance which would create any particular suspicion for it is shown by the testimony that it was probably due to air currents, drafts, etc., and these two being corner rooms, were subject to more drafts than the intervening ones. It might have been due to inflammable material in these two rooms, which was not in the others, or even the woodwork may have been more inflammable. And if we assume plaintiff's theory of defective wiring caused the fire, on which point the evidence clearly shows the wiring to have been defective and dangerous, it would not be unnatural for the wiring to cause a fire to start in more than one place in the house. The evidence does not justify us in finding that the fire broke out in two different parts of the house at the same time. The evidence offered by defendant on this point is purely opinion evidence and the facts do not justify the opinion.

The second circumstance as to no evidence on the clothes hangers, which is urged by defendant, is entirely without merit, assuming it was proven. The closet, as shown by the picture in the record, was badly burned, its walls charred, and there is no doubt that the fire hose was turned into it in order to extinguish the blaze. The force of the water from the fire hose, which necessarily had to be at close range to enter the closet, was sufficient to erase any evidence which might have been on these small wire clothes hangers. It was also sufficient to change the position of the hangers or even knock them from the rod on which they were hanging. Furthermore, it is shown there were remnants of clothes on the floor of the closet, including the remnants of plaintiff's wife's evening gown.

The third and most suspicious circumstance urged by defendant is that some rags, matting, etc., were found which smelled of turpentine. We think this circumstance is satisfactorily explained in the testimony. We might state at first that the firemen who extinguished the blaze testified that it was an ordinary fire, did not burn any faster than the usual fire, and there was no smell of turpentine or other inflammable substance of that kind. When the insurance adjusters appeared on the scene about 9 o'clock the morning of the fire, they dis-

covered nothing of the kind, but on their second visit about 4 o'clock in the afternoon they found on the floor in the closet, the inside of which had not been burned, some rags and a baby shoe which smelled of turpentine. On a shelf in this closet they found a half gallon fruit jar which had contained turpentine and which had been cracked by the heat and most of its contents leaked out on the things on the floor. On a cedar chest outside the closet there was found some matting, ordinarily used under carpets, which also smelled of turpentine. They likewise claimed they found at that time some clothes on a table in another room, with turpentine on them. The matting which was on the cedar chest no doubt came from the closet and was placed there by curiosity seekers or those who were looting the house. The record is clear that the house was filled with people going in and out, small, young, and old, some strangers in the neighborhood, from early in the morning until the afternoon; that some children were seen going away with belongings of plaintiff which they had found in the house. It also shows that the house was generally ransacked by these outsiders. It is not unreasonable to believe that this matting was thrown out of the closet by those who were in search of other valuables inside. The turpentine is shown to have been placed in the closet by plaintiff some time before the fire, after he had finished using a part of it in finishing the woodwork in his house. We are convinced that any article, rag, shoe, etc., which smelled of turpentine came from the closet where the jar of turpentine was kept.

We are unable to understand why the clothes on the table, if soaked with turpentine, did not burn, as the table itself was badly charred and the clothes only scorched. The clothes were taken from the line in the back yard the afternoon before the fire by plaintiff's wife and a neighbor and placed on a table preparatory to being ironed. It is likewise strange that the adjusters who were in the room at 9 o'clock where the table was, the morning of the fire, did not detect the odor of turpentine or discover the saturated clothes, if they were saturated. We are convinced that there were no saturated clothes on the table at the time of the fire. None of the saturated articles was taken by the adjusters until 4 o'clock on the afternoon of the fire, some fourteen hours afterwards. If plaintiff had placed these articles where they were found, he

had sufficient time to destroy them if he had wished. It is not reasonable to believe he would not have done so.

The other suspicious circumstance urged by defendant is the wife's departure to visit in Texas at 11 o'clock at night. The days were hot and it was much more pleasant to drive at night than in the daytime; however, we think her explanation of the trip is sufficient. When asked on cross-examination the purpose of leaving at that time of night, she answered:

"Well, my husband was working at night and I knew I would have to get back home so he could go to work at 5 o'clock the next evening, and it was so hot we just decided we would go that night so we would have longer to stay. We just went on a visit. That was the purpose of it."

■ We are of the opinion that the testimony as a whole does not raise even serious suspicion that the fire was of incendiary origin and certainly does not meet the requirements of law, which are that facts from which inference or presumption are drawn must be established in evidence and the inference or presumption to which these proven facts give rise must be strong and almost inevitable, or in the language of the Revised Civil Code, art. 2288, be "weighty, precise and consistent."

■ Since we have found the record fails to disclose that the fire was of incendiary origin, it is unnecessary to discuss the motive, but we think we shall do so. It is disclosed beyond doubt that plaintiff's home was a nice one and well furnished. All the neighbors commented on the nice furniture in the house, the manner in which it was kept, and the general neatness of the home at all times. The value of the wearing apparel, furniture, etc., in the home exceeded by far the amount of insurance plaintiff carried on it. After the fire, he and his family remodeled a chicken house in the back yard and occupied it as a home until he could rebuild, which he did. The insurance company which carried the insurance on the house paid off without a lawsuit. Although plaintiff owed some debts, he was not being pushed for payment by any one. It is indeed difficult to understand any motive he could have had in destroying his property and being inconvenienced as he was. He had no intention of moving. He rebuilt on the same lot and, if he recovers in this suit, is still the loser.

■ Another defense urged by defendant is that plaintiff submitted a list as a part of his sworn proof of loss, which was padded, false, and fraudulent to his knowledge. It contends that said list shows a suite of furniture which is alleged to have cost $558, when he only paid $413.50 for it; that he gave an incorrect date as to when he purchased it, stating it was in 1932 when it was 1931. When called before the adjusters for examination soon after the fire, he swore to this item and date. Plaintiff explains that the price of the furniture was originally $558 and, after being reminded by his wife on the day of trial, he recalled that he was given 25 per cent. off for cash. As to the dates, he gave them from memory and the mistake was only a natural one. It is difficult indeed to remember offhand the exact year one has purchased a certain article when some four or five years have elapsed since the purchase.

There was evidently no intention on the part of plaintiff to defraud the insurer and the insurer was not defrauded, for plaintiff could have left off the list entirely the suite of furniture and the value of the remaining items would have been greater than the amount of insurance carried on all of it. In order to work a forfeiture of insurance by false swearing, there must exist an intent to defraud and the statement made must be willfully false and concerning some material matter, and made with the intent to defraud the insurer. Plaintiff did none of the things required by the above rule to work a forfeiture.

Defendant's third defense is that plaintiff has not proved the value of the property lost in the fire. The proof is abundant and there is nothing to the contrary that the loss caused plaintiff by the fire exceeded the amount of insurance carried to cover his loss. A rehash of the testimony on that point is unnecessary.

■ ■ It was agreed by counsel for defendant that if defendant is found to be liable in this court, plaintiff is entitled to attorney's fees in the sum of $225, and plaintiff has answered the appeal praying that the judgment be amended in that respect; and also that he be allowed 12 per cent. penalty, as provided for in Act No. 168 of 1908. Under the provisions of that act, it is made mandatory on the courts to inflict the penalty and there is no discretion allowed the court in the matter.

It therefore follows that the judgment of the lower court is amended by awarding plaintiff a penalty of 12 per. cent. on the amount of the judgment and increasing the amount of attorney's fees from $150 to $225; and as amended it is affirmed, with costs.