107 So.2d 480 (1958)
Louis BARBARI and M. A. Simdorf, Plaintiffs-Appellants,
v.
FIREMEN'S INSURANCE COMPANY et al., Defendants-Appellees.
No. 4680.
Court of Appeal of Louisiana, First Circuit.
November 21, 1958.
Rehearing Denied January 5, 1959.
Writ of Certiorari Denied February 16, 1959.
*481 D'Amico & Curet, Parker & Parker, Baton Rouge, for appellant.
R. W. Williams, Baton Rouge, for appellee.
FRUGE, Judge ad hoc.
Plaintiffs Louis Barbari and M. A. Simdorf (Sindorf), as a partnership under the name of Louie's Barbecue, were engaged in the restaurant and bar business on the Airline Highway in the Parish of East Baton Rouge, Louisiana. The building in which the business was being conducted was owned by a Mrs. Traylor and was under lease to one Vincent Cefalu. Plaintiffs were sublessees of Cefalu on a verbal month to month basis.
The business was conducted by Barbari and in September of 1948, Barbari sold a ½ interest in the business to Sindorf.
On October 27, 1948, the Commercial Insurance Agency, Inc. sold and delivered four policies of insurance to the plaintiffs, issued by the defendants, Virginia Fire & Marine Insurance Company, Michigan Fire & Marine Ins. Co., Firemen's Insurance Co. of Newark, New Jersey, and the Reliance Insurance Co. Each policy was for the sum of $1,500 issued to "Louis Barbari and M. A. Sindorf, d/b/a Louie's Barbecue," for a term of five years, covering fire and lightning and extended coverage on the following described property:
On furniture and fixtures, tables, counters, dishes and all paraphernalia usual and incidental to the operation of a restaurant located in the one-story, concrete block, approved roof building situated approximately one and one-half miles southeast of the Plank Road, Airline Highway, Baton Rouge, Louisiana.
The building in which this property was situated was partially destroyed by fire on the morning of November 23, 1948, destroying most of the merchandise, furniture and fixtures belonging to plaintiffs as is more fully shown by reference to exhibit "A" attached to the petition of plaintiffs.
The amount submitted on the proof of loss to the defendant and as shown in Exhibit A was $6,958.80 and the value of articles salvaged amounted to $365.42, thus *482 leaving a value of $6,593.38, which is apparently not questioned by the defendants.
The plaintiffs made demand in due course upon the defendants and they refused to pay the full amount of the insurance which was $1,500 by each defendant or a total of $6,000.
On November 22, 1949, plaintiffs filed suit to recover on the insurance policies the full amount of $6,000 and defendants answered the suit and set up in their answer, the following defenses:
"11.
"That on or about the 23rd day of November, 1948 a fire of incendiary origin occurred on the premises described in the policies which damaged or destroyed certain property described in the policies.
"12.
"That defendants are informed and believed and therefore aver that the plaintiffs herein either jointly or separately, by themselves or through the intervention of some third person, burned or caused to be burned the property which was the subject matter of this insurance. Further or information and belief, defendants aver that plaintiffs started this fire or caused it to be started, deliberately and for the sole purpose of collecting under the aforesaid insurance policies.
"Defendants further show that plaintiffs were in such poor financial condition and their business was in such shape that they had a motive to set this fire or caused it to be set in order that they might collect the proceeds of these insurance policies."
On the trial of this matter plaintiffs offered in evidence the policies of insurance and the proof of loss and showed that the property was destroyed by the fire described above.
During the course of the trial, while Barbari was under cross-examination by defendants' counsel, defendants sought to introduce evidence of motive and that the fire was of an incendiary origin. At this point plaintiffs objected to the introduction of evidence to show motive or indicate the fire was of an incendiary origin.
The first objection as to motive was based on the ground that the fire was of an incendiary origin, otherwise evidence of motive could not be introduced. This objection was overruled. Counsel for plaintiffs then made a further objection that defendants' answer, as stated above (that the fire was of incendiary origin), was merely a conclusion of law by the pleader and that there should have been more specific allegations of facts before such evidence could be introduced. This objection was overruled. The objection was made general to all such evidence, motive and incendiarism, and the ruling of the court was made the same.
It is pertinent to observe that the trial court permitted the introduction of practically all kinds of evidence which might have shown in the slightest degree any suspicion upon the plaintiffs.
The trial court rendered judgment in a written opinion rejecting plaintiffs' demands. Hence, this appeal by plaintiffs.
Plaintiffs take the position that insurance companies for fire loss insured by them wherein they seek to escape liability on the basis of the fire was of an incendiary origin, such is a special defense and must be specially pleaded and the facts to be relied upon must be specifically alleged in the answer.
There is no question that an effort in avoidance or extinguishment of an obligation is a special defense and must be specially pleaded with sufficient facts alleged upon which to introduce proof of the extinguishment or avoidance. Plaintiffs cite as their authorities the following among others: Art. 327; LSA-R.S. 13:3601(2); LSA-C.C. arts. 1881, 1882, and 2130; Motor Finance Co. v. Universal *483 Motors, La.App., 168 So. 721; Williams v. Fisher, La.App., 79 So.2d 127, and several others.
Plaintiffs take the position that paragraphs 11, 12 and 13 of defendants' answer are mere conclusions of law, and that therefore the objection of counsel for plaintiffs to the introduction of any evidence which would tend to show that the fire was of an incendiary origin should have been sustained by the trial court.
Inasmuch as the court permitted any and all testimony to be introduced over plaintiffs' objection and inasmuch as we are finding for plaintiffs on the merits on the questions of fact, the issue of special defense passes out.
The fire was discovered at about 5 o'clock in the morning of November 23, 1948 by a witness by the name of J. C. Brown. In order to prove incendiarism, the defendants called as witnesses besides Mr. J. C. Brown, who discovered the fire, Mr. Doyle Brown, who was with Mr. J. C. Brown, Deputy Sheriff Tom Henderson and Deputy Sheriff Dewitt Embry, Dr. Edgar L. Compere, a chemist, Captain Hammond A. Story, a captain in the Fire Department. These witnesses are the only witnesses who were capable of testifying as to the actual physical conditions as they found them. Mr. J. C. Brown did not smell any combustibles when he entered the place immediately while the fire was burning. Doyle Brown smelled the smoke and went there during the time the fire was burning and he didn't smell any combustibles. Tom Henderson, deputy sheriff, was at the scene at 8 o'clock the next morning, and he did not smell any combustibles. Dr. Compere examined the cotton from the mattress which was taken out of the gambling room and refused to make a chemical analysis because there was nothing to analyze. There were other witnesses to wit, Young and LeBlanc, who were Deputy Sheriffs and others who made investigations. But their testimony does not appear to be in the record. The law enforcement officers of East Baton Rouge were very diligent in the investigation of this fire and they did everything possible to build a criminal case against plaintiffs herein. They failed to tie it down as to who started the fire or when it started, or where it started, why it was started and by what it was started, or whether there was any combustibles or explosives used. We find it burned as an ordinary fire would. That is the testimony of the witnesses. We do not believe from the evidence in this record that the fire was of incendiary origin because if it had the burning of the entire building would have been of much shorter duration. There are a lot of suspicions in this case, inferences and certain testimony which cast a reflection on the character of plaintiffs.
On the question of motive, there is evidence that the plaintiffs were in financial difficulties, that they had paid only part of their licenses to do business and that they operated on a short inventory but they had not been sued and they were not told by the tax collector that he would close their business if they did not pay the licenses in time. There is evidence in the record that one man was willing to buy the business for $8,000, $5,000 cash and the balance on terms, and while the deal was never closed, it is true that it was in the discussion stage and that they could have got $5,000 cash from this one witness. There is some testimony casting suspicion on the plaintiff Barbari that he had a prior fire at Sorento. There is no evidence in this record that the Sorento fire was of incendiary origin but to the contrary, he testified that he had lost money at that place. We gave a close, careful and considerate study of this record and it would serve no useful purpose to discuss in details the various phases of the testimony.
Defendants take the position that the fire was clearly of incendiary origin. They point out that the unoccupied premises were left for more than an hour before the fire was noticed and that in this time someone had broken into the coin machines for the purpose of removing the money. They cite *484 the case of Wilson v. Aetna Ins. Company, La.App., 161 So. 650. The facts in that case are distinguishable from the facts in the case at bar. In the Aetna case the insured lived near the levee. The property was expropriated by the levee board and she was given a definite date to move. With part of the money she received for the property, she bought two more houses for the sum of $175 which she moved onto the property she was being forced to vacate. She insured the houses for $700 and $300, and shortly thereafter, fire broke out in the two end houses. The court felt that this could not be a coincidence, since none of the houses had gas or electricity. The defendants further point out that the courts have been confronted with cases of this nature before and that no leniency should be shown plaintiffs in preference to defendants, even though the failure to give plaintiffs the benefit of the doubt would result in judicially branding plaintiff as arsonists. They point out that language particularly applicable here is found in the case of Parker v. Hartford Fire Ins. Co., La.App., 163 So. 435, 438, in which the Orleans Court of Appeal reversed a jury verdict and sustained the defense of arson. We quote:
"It is not necessary for us to determine, and we do not undertake to do so, whether or not plaintiffs set or caused to be set the fire which destroyed their home. This is a civil action and to it a special defense was made. The jurisprudence herein cited clearly shows that, to maintain that defense, as in all other civil actions, a preponderance of evidence is necessary. Beyond any question of a doubt, the fire was preceded by an explosion and it is likewise certain that such a set-up was found on the premises as to convince any fair mind that the explosion and fire were of an incendiary origin. There is a total absence of evidence even tending to show a motive or incentive in any third person or persons. Under these circumstances, the inference or presumption necessary to maintain the defense is, we believe, sufficiently established, and the following language of this court in St. Philip v. Lumbermen's Ins. Co. of Philadelphia, supra, [18 La.App. 331, 137 So. 359,] we believe to be particularly applicable: `Of course, it is possible that he was the victim of circumstances, and, however unlikely it may seem, someone unknown to him, acting independently and for some purpose of his own, may have started the fire. If such be the case, a grave injustice will have been done plaintiff, in his personal and property rights, and his good name will have been tarnished by the stigma of undeserved pollution. We have no doubt that instances have occurred in the past and will recur in the future, wherein the reliance upon circumstantial evidence has resulted in even greater and more grievous error. All judicial systems, being human, are imperfect, and their operation must inevitably result in certain vicarious sacrifices. All a court of justice can do is to hew to the line of correct judicial procedure and let the chips fall where they may.'"
Defendants then point out that after plaintiffs made out a prima facie case they rested and shifted the burden of going forward with the evidence to the defendants. And defendants contend that they succeeded by a preponderance of the evidence in establishing that this fire was of incendiary origin, and that plaintiff had an overwhelming motive in seeking the destruction of this property. They further point out that plaintiffs in rebuttal had attempted to explain away the circumstantial evidence which so overwhelmingly pointed the finger of guilt to them. In rather strong language, defendants state that it is obvious that the explanations by plaintiffs were false and deliberate evasions.
As pointed out hereinabove, we disagree. We have found that the fire is not of incendiary *485 origin and we have found that though a motive may be probable, it is not such as would lead to certainty.
We believe pertinent is the language the court used in the case of Wightman v. Western Marine & Fire Ins. Co., 8 Robinson, 442, 449:
"Another ground of defense is that the plaintiff was the cause of the loss, and the judge below seems to have been of that opinion. In coming to that conclusion, it seems to us, that the judge has assumed as facts, what we cannot consider as proved. He seems to take it, almost as granted, that the plaintiff set fire to his store in New York, in November, 1839, and again to the one in Chartres Street in the Spring of 1840. He also assumes, that he had a key to the store in Bienville Street, at the time of the fire, in 1841. Of these facts, we see no sufficient evidence in the record. It is certainly very remarkable, that the plaintiff should have had his goods burned three times in about eighteen months; yet we cannot say, that that of itself is a sufficient reason to say, that he was the cause of the fires."
It would appear that mere suspicion is not sufficient to show that a fire was of incendiary origin, the facts from which inference or presumption are drawn, must be established in evidence and the inference or presumption to which these proven facts give rise, must be strong and almost inevitable. They must be weighty, precise and consistent.
In the case of Perot v. Carolina Ins. Co. of Wilmington, North Carolina, La.App., 171 So. 458, there were suspicious circumstances. Plaintiff's home was destroyed by fire in the early hours of the morning while no one was in the house and the plaintiff was at work and his wife and children had left the home to go visiting out of the state. It was shown that the fire started apparently in the front bedroom and that other rooms were gutted by fire although opposite from each other. It was also shown that apparently the clothes had been removed from some of the clothes closets. It was also shown that there were some rags apparently soaked in turpentine. On a shelf in the closet was found a half gallon fruit jar containing turpentine. On a cedar chest outside of the clothes closet was found matting ordinarily used under carpets which also smelled of turpentine. In addition to that, there was turpentine all over the place. Despite these facts, plaintiff in the Perot case was allowed to recover.
In the case at bar, there is no indication of any combustible material which would show that the fire was of an incendiary origin.
The court held that a mere suspicion of guilt was insufficient in the case of Di Martino v. Continental Insurance Company of New York, 187 La. 855, 175 So. 598 although of an incendiary origin. In the case of Sumrall v. Providence Washington Ins. Co., 221 La. 633, 60 So.2d 68, 69, the court stated:
"Inasmuch as the defense is arson, the burden rested upon the insurer to establish, by convincing proof, that the fire was of incendiary origin and that plaintiff was responsible for it. It is well settled that the insurer need not prove its case against a plaintiff beyond a reasonable doubt; it suffices that the evidence preponderates in favor of the defense. Proof, of course, may be and invariably is, entirely circumstantial. And, in these instances, a finding for defendant is warranted where the evidence is of such import that it will sustain no other reasonable hypothesis but that the claimant is responsible for the fire. * * *"
In Parker v. Hartford Fire Ins. Co., La. App., 163 So. 435, the fire was preceded by a loud explosion which blew off one wall and part of the roof. After the fire a number of containers, some still having coal oil and gasoline, were found scattered *486 around the house; the gas jets on the stove were left turned on; and it was established that the explosion was caused when the pilot light of the hot water heater ignited the fumes. The court there observed at page 436:
"* * * On the other hand, not only must the facts from which the inference or presumption of the act is drawn be established by evidence, but the inference or presumption to which these proven facts give rise must be strong and almost inevitable * * *."
In St. Philip v. Lumbermen's Insurance Co., 18 La.App. 331, 137 So. 359, a number of barrels of inflammable oil were discovered. Excelsior and other materials calculated to feed the flames were strewn about. The insured admitted that the fire was of incendiary origin but denied any knowledge of it. The court found sufficient evidence to conclude that he was responsible for the fire in the following language:
"It must be conceded that there is no direct testimony in the record connecting St. Philip with the burning of his home, the evidence being entirely circumstantial, but we believe that, such as it is, it is sufficient to create a presumption so strong as to exclude any other reasonable hypothesis. * * *"
We held in the case at bar that there is no preponderance of evidence against plaintiffs, but going further or stating differently, we do not find the circumstantial evidence is such as to preclude every other reasonable hypothesis. The record discloses possibilities: For instance, low voltage burned out appliance motors; defective wiring could have originated the fire; the thieves who broke in the machines prior to the fire could have accidentally set it. Besides that there could have been other causes by loiterers or enemies.
There seems to be no serious dispute as to the amount to be recovered. The amount of $6,000 must be awarded to the plaintiffs according to the terms of the contract.
We will now consider the question of the penalties and attorneys' fees. LSA-R.S. 22:658 provides:
"* * * Failure to make such payment within sixty days after receipt of such proofs and demand therefor when such failure is found to be arbitrary, capricious, or without probable cause, shall subject the insurer to a penalty, in addition to the amount of the loss, of twelve per cent damages on the total amount of the loss, payable to the insured, together with all reasonable attorney's fees for the prosecution and collection of such loss * * *."
We are of the opinion, however, that defendants are not arbitrary or capricious. The trial judge found for defendants and though we find he erred, that is an indication of probable cause to justify defendants in resisting this suit. Hence, penalties and attorneys' fees are denied.
For the above and foregong reasons, the District Court judgment is reversed; that there be judgment herein in favor of plaintiffs Louis Barbari and the estate of M. A. Sindorf, through Sam D'Amico, administrator of said Succession and against the defendants, Firemen's Insurance Company of New Jersey, Virginia Fire and Marine Insurance Co. of Virginia, Michigan Fire and Marine Insurance Company of Michigan and the Reliance Insurance Company of Pennsylvania, in the full sum of $6,000, with legal interest thereon from judicial demand and for all costs in all courts.
Each defendant insurance company, respectively, is cast for $1,500 in principal with legal interest thereon from judicial demand and for costs proportionately (25% of the total costs).
Reversed.