LOTTINGER, Judge.
This is a suit filed by William Wisner, as petitioner, against Mid-South Credit Services Corporation, as maker, and Walter H. Travis, as endorser, of a promissory note. The defendants filed a third party petition as against Walton J. Barnes, claiming that payment of the consideration of the said promissory note had been made to Walton J. Barnes and, that should there be any indebtedness found against said defendant unto petitioner then they, in turn, should have judgment against Walton J. Barnes. The Lower Court rendered judgment in favor of petitioner and against defendants, and dismissed the third party demand filed by defendants. The defendants have taken this appeal.
The note sued upon represented consideration paid to petitioner for his stock in Baton Rouge Adjustment Company, Inc., when Mid-South Credit Service Corporation purchased all the stock in the adjustment company. Mr. Walter Travis, the endorser on the promissory note and a defendant herein, was the principal officer and stockholder of Mid-South. The signature of Mid-South, as maker of the promissory note, is not denied and the endorsement by Mr. Travis was admitted. The third party demand contends that the third party defendant, Mr. Barnes, received the payment on the note and that the note has been thereby extinguished.
The amount of the note sued on is in the sum of $1,800.00 with interest thereon at the rate of 8% per annum from December 30, 1961, until paid plus 20% as attorney fees on all costs.
In its reasons for judgment, the Lower Court said:
“It appears the note represented consideration paid to a stockholder of a collection agency for his stock in the corporation which interest was acquired by another corporation, Mid-South Credit Service Corporation. The endorser, Walter Travis, was the principal officer and stockholder of Mid-South. Their defense to the claim of the plaintiff is simply one of extinguishment of the obligation. On this score, it must be pointed out that such is an affirmative defense and must be specially pleaded. LSA-CCP Art. 1005. This means that such pleading should aver sufficient facts upon which to introduce proof of the ex-tinguishment or avoidance. Barbari v. Fireman’s Insurance Co., App.1959, 107 So.2d 480. In the answer to the original demand of petitioner, the defendants merely state: ‘Defendants aver that they have paid the note in question to Walton J. Barnes.’ Despite its conclusion that such special defense lacked the required particularity, the Court admitted evidence on this point.
The evidence adduced merely reflects that Barnes, as attorney for the former corporation and husband of a stockholder, had advanced periodic loans to the corporation for its maintenance and continued existence prior to its acquisition by Mid-South. Shortly after the consummation of the agreement and purchase by Mid-South, Barnes contacted Travis declaring that there was a bank overdraft and some unpaid bills of the corporation which needed to be taken care of. Travis, consistent with the provisions of the agreement (Exhibit P-2), advanced $3,500.00 for the benefit of Mid-South for the purpose of covering the overdraft. Barnes applied the major portion or all of this amount towards substantial reimbursement of his advances. The Court is satisfied that the sums furnished by Travis were used to defray legitimate obligations of the corporation, though not purely in accord with the representations made to him at *186 the time the request was made. But more important towards the decision to be made herein, there was absolutely no evidence indicating that the amount forwarded was for the payment of the note sued upon. The burden of proof is surely upon the defendants in this aspect and they have failed. Pioneer Bank & Trust Co. v. Foggin, App.1965, 177 So.2d 131, app. denied 248 La. 423, 179 So.2d 18.
Further, insofar as any allegation of failure of consideration raised by the endorser, it is well-established that the liability of an accommodation endorser or maker of commercial paper is not affected by the fact that he received no consideration for his signature and name. LSA-R.S. 7:29. Also William D. Seymour and Company, Inc. vs. Castell, et al., 107 So. 143; and Heymann v. Reynolds, [160 La. 371], 12 Orleans App. 287.”
The evidence reflects that following the sale and delivery of the note herein sued upon, all of the assets of the Adjustment Bureau were delivered to Mid-South. Although the defendants contend that they were not advised at the time of the sale that some collections had been made by the Adjustment Bureau, the proceeds of which had not been transmitted to their clients, the evidence indicates that these collections were of a small amount. It appears, of course, that any collection agency at any time has on hand collections that have not been yet transmitted to its clients for various reasons.
Furthermore, in the instrument of transfer, Mid-South agreed to pay all outstanding indebtednesses of the corporation which it was buying and, although Mr. Travis contends that he requested Mr. Barnes, who was an attorney handling the transaction, to insert a “hold harmless” clause in the agreement with regard to any outstanding indebtednesses of the bureau, he did sign this instrument without such a clause being inserted therein. Mr. Barnes contended that no request was made of him by Mr. Travis.
The evidence does reflect that Mr. Barnes informed Mr. Travis that funds were needed to pay the debts of the Adjustment Bureau and, in response thereto, Mr. Travis forwarded a check in the sum of $3,500.00 payable to the corporation, Baton Rouge Adjustment Bureau, Inc. It is claimed by Mr. Travis that it was his intention that the note herein sued upon would be paid from the proceeds of said check. We are unable to understand, if such was his intention, why the check was made payable to the adjustment company instead of to the holder of the outstanding promissory note.
We further find no merit to the contention by the defendant, Travis, that the vendors of the stock in the Adjustment Bureau withheld from him information to the effect that the adjustment company was defunct at the time of the sale. The testimony of Mr. Travis is to the effect that an investigation as to the status of the company was made by his own representative, Mr. John LeBoeuf, and that he relied on the information which he received from Mr. LeBoeuf in deciding to purchase the company. At the time, Mr. LeBoeuf was president of Mid-South Credit Service Corporation, of which Mr. Travis was the primary owner, and Mr. LeBoeuf testified that the Mrs. Rousseau who was employed by the Adjustment Bureau and who was present when he made an inventory of the assets of the Bureau, did not misrepresent anything to him whatsoever.
We feel, as did the Lower Court, that the defendants have failed to prove payment or want or failure of consideration.
The plaintiff, appellee, as well as the third party defendant and appellee herein, have filed an answer to the appeal and are now asking for damages as the result of this frivolous appeal as is provided for in LSA-C.C.P. Art. 2164. There is much jurisprudence under this Article, and it is well settled, “that damages for a frivolous appeal are usually not allowable unless it is manifest that the appeal was talc- *187 en solely for delay or that counsel does not seriously believe in the view of the law he advocates, even though the appeal is without serious merit.” See Motion Picture Advertising Corp. v. Smith Wrecker and Towing, La.App.1968, 207 So.2d 847 and cases therein cited. We are therefore unable to award damages for a frivolous appeal herein since we are of the opinion that it is not manifest that the appeal was perfected solely for delay and since it is not apparent that able counsel for appellants, who filed original and supplemental briefs timely and made a vigorous oral argument, did not believe in the merits of his appeal.
For the reasons hereinabove given, the decision of the Lower Court will be affirmed, all costs of this appeal to be paid by defendants.
Judgment affirmed.