TUCKER, Judge.
Plaintiff, Warren Neubauer, filed this suit, as holder for value to recover the principal, interest and attorney fees on two promissory notes against the defendant, Mrs. Mary Jane Thiac. One of the notes was dated April 3, 1970, in the principal sum of NINE THOUSAND TWO HUNDRED TWENTY-FIVE and No/100 ($9,225.00) DOLLARS, payable on demand, with interest and attorney fees, and interest was credited to August 31, 1970. The second note was dated June 5, 1970, in the principal sum of FOUR THOUSAND EIGHT HUNDRED and No/100 ($4,800.-00) DOLLARS, payable in monthly installments of $200.00 each with interest and attorney fees, with this second note being credited with the interest to August 31, 1970, and a payment on the principal of $200.00. Both notes were signed on the faces thereof by Taurus, Inc. of Raceland, by Brandt Thiac and Mary Jane Thiac.
After a trial on the merits the trial court rendered and signed a judgment rejecting Mr. Neubauer’s demands against Mrs. Thiac. Plaintiff has appealed from this judgment alleging that the lower court *295 erred in reaching its decision in the following respects:
“(1) In concluding that the prior advances made by plaintiff to the corporation operated by defendant’s husband was insufficient or could not be the basis for the making of a valid promissory note by that company.
(2) In concluding that separate consideration to an accommodation maker is a requirement in order to hold said accommodation maker responsible.
(3) In concluding that, in the absence of fraud, notes made and dated prior to the date of their execution were not valid.”
The facts of the case are relatively undisputed. Thiac was the president and Neubauer was the secretary of Taurus, Inc., a concern which was engaged in the garment manufacturing business with its plant in Lutcher, Louisiana. The corporation experienced serious financial problems early in its operation. On several occasions, prior to the signing of the two subject notes, Mrs. Thiac had mortgaged her separate property, which she inherited, to local banks in order to obtain funds for the use of the corporation. The record also reflects that the plaintiff made several monetary advances to the corporation. These amounts were supported by the testimony of Mr. Laporte, who audited the books of the corporation. Laporte exhorted plaintiff to get his business in shape with respect to money owed to him by the corporation. The plaintiff discussed with Thiac the matter of his obtaining a liquidation or acknowledgment of the debts due the plaintiff by the corporation to no avail. An inconsequential dispute arose about whether the notes were filled out before Mrs. Thiac’s signatures were appended thereto. In any event Mr. Laporte corroborates plaintiff’s testimony that, when he saw and observed the notes they were filled out, and only the signatures were missing. Neubauer said that he was unable to reach any agreement with Thiac about his advances to the corporation, until the latter part of September or early October, 1970, when it was decided that the corporation plant should he moved to New Orleans in order that they could tap a larger labor market for the handling of a substantial blue jean contract. A sum in the neighborhood of $10,000.00 was considered necessary to accomplish this task. At this time the plaintiff proposed that the defendant sign the two notes, and he would, in turn, attempt to sell or discount the notes to his father, Benjamin Neubauer, so that the necessary funds for moving the plant could be obtained. Thiac testified that the plaintiff told him if he would get Mrs. Thiac to sign the notes that he, Neubauer, would get the money from his father — “It wasn’t a question of try. He would definitely get the money.” Tr. 97. The plaintiff was unable to sell or discount the two notes, and it is uncontradicted that Thiac asked the plaintiff to return the notes on several occasions.
The parties are in accord that Mrs. Thiac was an accommodation maker on both notes, and the record establishes that she signed the notes in that capacity for the sole purpose of aiding in procuring the needed additional funds for the removal of the plant facilities from Lutcher to New Orleans.
The defendant, in her original answer, denied owing the notes and pleaded that there was a total want and failure of consideration. In her supplemental answer she further averred that the consideration of the notes was based and depended upon the ability of the plaintiff to discount the notes with his father. In the amended answer she reiterated a total failure and lack of consideration, and also that she executed the notes only to secure an obligation which was to arise in the future, but that said obligation never came into being, and there was never any primary obligation to support defendant’s collateral obligation.
The rule in Louisiana with respect to there being no necessity that consideration move to an accommodation party on an in *296 strument which he has signed is expressed in LSA-R.S. 7:29 as follows:
“An accommodation party is one who has signed the instrument as maker, drawer, acceptor, or indorser, without receiving value therefor, and for the purpose of lending his name to some other person. Such a person is liable on the instrument to a holder for value, notwithstanding such holder at the time of taking the instrument knew him to be only an accommodation party.”
LSA-R.S. 7:24 provides that every negotiable instrument is prima facie presumed to have been issued for valuable consideration.
Nevertheless, as between the maker and payee, total want of consideration or failure of consideration may be shown. Lighthouse Life Insurance Company v. Johnson, La.App., 180 So.2d 108; Seymour v. Castell, 160 La. 371, 107 So. 143; Wisner v. Mid-South Credit Service Corp., La.App., 250 So.2d 184; Price v. Lanoue, La.App., 190 So.2d 478. The obvious reason for the foregoing rule is that a payee who takes a note for which no consideration was granted, or to which the consideration has failed, is not deemed a holder in due course because the essential element of giving value is absent. It is well established, however, that as to a third party holder in due course, a maker may not assert the defense of lack of consideration or failure of consideration. LSA-R.S. 7:28; Associates Discount Corporation v. Bankston, La.App., 246 So.2d 335; writ refused 258 La. 765, 247 So.2d 864.
The rule that a maker may assert the defense of want of consideration, or failure of consideration, against the payee of a negotiable instrument, is also applicable to an accommodation maker or endorser. C H F Finance Discount “A” Company v. Harris, La.App., 180 So.2d 457.
The record establishes that plaintiff payee is not a holder in due course of the instruments sued upon because of a total lack, failure or want of consideration.
While the record shows an antecedent debt due plaintiff by Taurus, Inc., the proof is also crystal clear that the two notes in question were not executed by the prime maker, Taurus, Inc., or the accommodation maker, Mrs. Mary Jane Thiac, as an acknowledgment or payment of the corporate indebtedness due plaintiff. It appears beyond question that subject notes were executed for the exclusive purpose of Neubauer negotiating, selling or discounting same in order to obtain funds to move the corporate plant to New Orleans. Since this eventuality never came to pass, the notes fall for want or failure of consideration, not only as to the prime maker, Taurus, Inc., but also to defendant as accommodation maker. See C H F Finance v. Harris, above.
We are cognizant of the rule that an accommodation maker or endorser may not resist liability on a negotiable instrument on the ground that no consideration flowed to him personally. The obvious reason for this rule is that receipt of consideration is inconsistent with the position of accommodation maker or endorser. This rule, however, can be of no comfort to plaintiff herein inasmuch as there was failure of consideration between the prime maker and plaintiff-payee which vitiated the instruments as regards both the prime and accommodation maker.
In further support of the foregoing conclusions, the evidence reflects that the notes had been prepared by Neubauer on the approximate dates indicated on the instruments for the amounts plaintiff considered to be due him for loans and advances he made to the corporation. The plaintiff testified he “carried these notes with him” for a considerable period of time — some three to five months, during which time he attempted to negotiate with Thiac, and come to some agreement as to the amount due him by the corporation and to prevail on Thiac to sign these notes on behalf of *297 the company. Neubauer was unable to accomplish his purpose, and it was not until the question of moving the business entered the picture that Neubauer was successful in getting the notes signed by Thiac for the corporation, as actual maker, and by Mrs. Thiac, as accommodation maker, but the signatures were not procured as evidence or acknowledgment of the previous debts due by the corporation to Neu-bauer, but for the purposes hereinbefore stated. In this connection Thiac’s testimony is unrefuted that Neubauer called on him for another note of $4,500.00 or $5,000.00 so that Neubauer’s tender of the three notes for discount purposes would be more attractive to his father, with whom he proposed to obtain the loan, on a bargain discount figure of $10,000.00. If the notes sued on here were designed to pay the corporate debt to Neubauer, there would have been no need for the additional note, which Thiac alone signed. Neubauer admitted that the additional note brought the total of the notes to a considerable amount more than he was personally claiming. These actions on the part of Neu-bauer reflect his design or scheme to obtain the acknowledgment of the corporate indebtedness to him, and to get Mrs. Thiac’s signature as additional security for the payment of the note. It is altogether likely and reasonably to be inferred from the evidence that Neubauer had no intention of negotiating the notes and never really intended to do so.
The mere existence of an antecedent indebtedness in favor of Neubauer against the corporation does not presuppose that the execution of these notes was intended, as between the parties, as an acknowledgment of this debt or payment or security therefor; it is the intention of the parties, the motive or cause for the execution of a note, which determines the purpose for which they were given, and, consequently, whether or not it was consideration for these particular instruments.
The evidence is quite clear that these notes were signed by Thiac for the corporation and his wife, as accommodation maker, for the express and sole purpose of obtaining funds for the corporate moving expenses. This suspensive condition never came to fruition, and the notes are not collectible for the reason that there was a total failure or lack of consideration in that the notes were not discounted as originally envisioned by the parties.
In view of the foregoing conclusions, there is no necessity for discussion of the other issue posed.
We find no manifest error in the decision of the trial court, and for the foregoing reasons, the judgment is affirmed.
Affirmed.